**Adeline JONES, Plaintiff–Appellant,**

v.

**Lauro F. CAVAZOS, Secretary, United States Department of Education, in his official capacity, and Richard A. Hastings, etc., Defendants–Appellees.**

**No. 88–7763.**

United States Court of Appeals, Eleventh Circuit.

Dec. 6, 1989.

O. Randolph Bragg, UAW Legal Services Plan, Newark, Del., Alice J. Hancock, UAW Legal Services Plan, Decatur, Ala., for plaintiff-appellant.

Carol Bengle and Fred J. Marinucci, U.S. Dept. of Educ., Washington, D.C., for defendants-appellees.

Before COX, Circuit Judge, HILL *, Senior Circuit Judge, and SNEED **, Senior Circuit Judge.

PER CURIAM:

In the early 1970's, Adeline Jones borrowed money under the National Direct Student Loan Program ("NDSL") to attend Coahoma Junior College (the "College") in Clarksdale, Mississippi. This loan, authorized under Title N–E of the Higher Education Act of 1965 (as amended 20 U.S.C.A. §§ 1087aa *et seq.* (1978)), was made and administered by the College. The College placed the loan in default in April 1974, and in 1986, assigned the loan to the Secretary of Education for collection. In 1987, the U.S. Department of Education sent Jones a letter informing her that if she did not arrange to repay this obligation, the loan could be subject to offset against her income tax refund.

Jones then brought suit against the Secretary of Education and its former Director of Debt Collection and Management Assist-

ance Service, seeking declaratory and injunctive relief in connection with the proposed tax refund offset. Specifically, Jones sought a declaration that the proposed offset violated her Fifth Amendment due process rights because adequate notice was not given and a hearing was not provided. She sought an injunction to prevent the offset. While her suit was pending, the claim for injunctive relief was mooted by Education's intercept of the refund involved. Thereafter, the district court granted the defendants' motion for summary judgment, and Jones appeals. We affirm.

## I. BACKGROUND

As part of the Deficit Reduction Act of 1984, Congress enacted legislation permitting any federal agency owed a past-due legally enforceable debt by an individual to seek an offset of the debt against the debtor's tax refund by notifying the Secretary of the Treasury. 31 U.S.C.A. § 3720A(a), (c) & (d) (Supp.1989). Treasury regulations set forth the times, manner of submission, and information required to be included in or accompany the notice to Treasury. These regulations, codified at 26 C.F.R. § 301.6402–6T (1988),[1] describe preconditions which a past-due legally enforceable debt must meet before it may be referred to the Internal Revenue Service ("IRS") for offset. The purpose of these conditions is to ensure that the agency has made some effort to collect the obligation and is not seeking tax refund offset as a means of first resort to collect the debt. *See* Reduction of Tax Overpayments by Amount of Past-due Legally Enforceable Debt Owed to Federal Agency, 50 Fed.Reg. 39661 (1985) (explanation of regulatory provisions).

One precondition of tax refund offset requires that any federal agency seeking to use the offset program promulgate regula-

---

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable Joseph T. Sneed, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

1. These regulations were amended effective May 13, 1987. *See* 52 Fed.Reg. 17949 (1987). Thus, the regulations in effect at the time of this offset appear in the 1988 Code of Federal Regulations.

tions governing its operation within that agency. 26 C.F.R. § 301.6402–6T(b)(1). Pursuant to this requirement, the Department of Education issued regulations governing general offset and IRS tax refund offset procedures. 34 C.F.R. §§ 30.20 to 30.35 (1987). These Department of Education regulations detail, among other things, the notice which a debtor is entitled to receive, procedures by which the debtor must request an opportunity to inspect and copy records relating to the debt, procedures for obtaining review of the existence or amount of the debt, procedures for obtaining an oral hearing (and the rules applicable thereto), and specifically, the procedures, time frames, and rules applicable when debts are referred to the IRS for offset.

The Department of Education regulations also exist to satisfy requirements found in the offset statute itself. Subsection (b) reads:

No Federal agency may take action pursuant to subsection (a) with respect to any debt until such agency—

(1) notifies the person incurring such debt that such agency proposes to take action pursuant to such paragraph with respect to such debt;

(2) gives such person at least 60 days to present evidence that all or part of such debt is not past due or not legally enforceable;

(3) considers any evidence presented by such person and determines that an amount of such debt is past due and legally enforceable; and

(4) satisfies such other conditions as the Secretary may prescribe to ensure that the determination made under paragraph (3) with respect to such debt is valid and that the agency has made reasonable efforts to obtain payment of such debt.

31 U.S.C.A. § 3720A(b) (Supp.1989). Thus, pursuant to the offset statute and regulations, the Department of Education notifies delinquent debtors whose debts it proposes to offset against tax refunds and sends them a copy of the pertinent Education regulations. Although section 3720A and the IRS regulations require that the taxpayer be granted at least sixty days to present evidence that the debt is not past-due or legally enforceable, the Education regulations which are sent to debtors provide for a more generous sixty-five day period. 34 C.F.R. § 30.33(d)(1).

Having focused on the applicable statute and regulations, we turn to Jones' claims. As the district court resolved the case on a motion for summary judgment, our review is plenary. *See Erwin v. Westfall*, 785 F.2d 1551, 1552 (11th Cir.1986); *Bailey v. Carnival Cruise Lines*, 774 F.2d 1577 (11th Cir.1985). Jones contends that the notice she received violated her Fifth Amendment right to procedural due process for two reasons.[2] First, she alleges that the notice was insufficient because it failed to provide a list of possible defenses; second, she asserts that the Department of Education failed to afford her an appropriate hearing. We conclude that Jones lacks standing to bring either of these Fifth Amendment due process claims.

Jones also contends that the district court erred in concluding that her defaulted student loan debt was legally enforceable. We find that contention to be without merit.

## II. STANDING

Article III of the Constitution requires that the resources of the federal judiciary be applied only to adjudicate actual "cases" and "controversies." *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The constitutional and prudential limits which counsel a federal court against exercising its judicial power reflect the separation of powers principle on which the federal government is based.[3]

---

**2.** This section of the Fifth Amendment states: "No person shall ... be deprived of life, liberty, or property, without due process of law...." U.S. Const. Amend. V.

**3.** "The power to declare the rights of individuals ... 'is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversies.'" *Valley Forge v. Americans United,* (quoting *Chicago & Grand Trunk*

Of the various Article III doctrines that serve to define and limit the role of the federal judiciary in our system of government, "perhaps the most important" is standing. *Id.*

The judge-made prudential limitations encompassed in standing, which include the usual prohibition against allowing litigants to assert the legal rights of others, function to ensure "that the legal questions presented to the court will be resolved ... in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). *See also, id.* at 486, 102 S.Ct. at 766 ("[S]tanding is not measured by the intensity of the litigant's interest or the fervor of his advocacy."). It is the constitutional component of standing, however, that is indispensable:

> [A]t an irreducible minimum, Art. III requires that the party who invokes the court's authority "to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979), and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 41, 96 S.Ct. [1917,] 1924, 1925, 48 L.Ed.2d 450 (1976).

*Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758. *See also, Allen*, 468 U.S. at 751, 104 S.Ct. at 3324 (holding that standing "has a core component derived directly from the Constitution.").

■ The latter two prongs of the constitutional component of standing, "fairly traceable" and "redressability," initially were considered to be "two facets of a single causation requirement." C. Wright, *Law of Federal Courts* § 13, p. 68, n. 43 (4th ed. 1983). In *Allen v. Wright*, however, the Supreme Court clarified the importance of separate inquiry regarding each prong. The first examines the nexus between the conduct and the injury, while the second focuses on the connection between the injury and the relief sought. *See Allen*, 468 U.S. at 753, 104 S.Ct. at 3325, n. 19. Separate analysis of each is necessary, as both components are required for the litigant to attain standing. In the case before us, we conclude that the appellant fails to demonstrate that the challenged act caused her alleged injury.[4]

Jones' sole defense to the offset action taken by the Department of Education is the statute of limitations.[5] Jones' student loan was made between 1969 and 1972, with the last disbursal being made November 16, 1972. The College placed the loan in default less than two years later, but did not assign it to the Department of Education for collection until October 1986. Thereafter, Jones received a letter dated September 7, 1987, informing her that if payment on the delinquent loan was not received immediately, then her 1987 tax refund would be subject to offset if an authorizing law was enacted.[6] Jones was

---

*R. Co. v. Wellman*, 143 U.S. 339, 345, 12 S.Ct. 400, 402, 36 L.Ed. 176 (1892)).

**4.** Jones' loss of her tax refund undeniably alleges a cognizable injury; thus, we find the initial prong of the standing test met. *See Watt v. Energy Action Educational Foundation*, 454 U.S. 151, 161, 102 S.Ct. 205, 212, 70 L.Ed.2d 309 (1981). Since we hold that Jones does not satisfy the second prong of the standing inquiry, we need not consider the redressability component.

**5.** Jones argues that the Treasury regulation, 26 C.F.R. § 301.6402–6T, sets forth a 10 year limitations period measured from the initial default date of the loan, thus, in this case, barring collection of her delinquent debt sometime in

1984, before it was ever assigned to the Department of Education for collection. We reject this construction of the offset statute for the reasons set forth below in Part III.

**6.** As originally enacted, section 3720A applied to tax refunds payable under 26 U.S.C.A. § 6402 (1989) for calendar years 1986 and 1987. Due to the success of the program it was extended first to refunds payable on or before July 1, 1988, Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, 101 Stat. 1330–376, and then to refunds payable on or before January 10, 1994. Act of October 13, 1988, Pub.L. No. 100–485, 102 Stat. 2425. The notice to

sent a photocopy of the Department of Education rules and regulations (34 C.F.R. § 30.20 *et seq.*) detailing her rights and the procedures by which she could object. Despite Jones' failure to file a request for review within sixty-five days, 34 C.F.R. § 30.33, she subsequently filed a letter objection through counsel. The Department reviewed and rejected her statute of limitations defense. Jones' letter asserted the general federal statute of limitations of six years which is applicable to actions founded in contract, 28 U.S.C.A. § 2415 (Supp. 1989), arguing that six years had elapsed since the loan first became delinquent. The Department of Education responded that 20 U.S.C.A. § 1091a (Supp.1989) stated the applicable period of limitations for lawsuits on debts assigned to the Secretary of Education for collection, commencing on the date the loan was assigned.

Jones contends that the notice she received was constitutionally defective because it did not include a list of "common" or possible defenses which she might have asserted in response to the proposed offset. Neither in her complaint, nor in her brief, nor at oral argument before this court did Jones come forth with any suggestion of a defense that might have been listed on which she could have relied. Jones' attorney, in fact, candidly admitted to this court that the only basis Jones has for denying she owes the money is the passage of time. In view of this admission, the failure to list possible defenses in the offset notice which she received could not possibly be the cause of any injury to Jones.

■ Jones also alleges a due process violation because the Department failed to provide a timely, live administrative hearing on her objection, but instead directed her to contact a debt collection agency which she maintains had no authority to conduct a review. Again, we find that Jones lacks standing to assert this claim, as it was not the cause of any injury to her. Jones was not accorded an oral hearing because she did not comply with the Department's regulations that were sent to her. Specifically, 34 C.F.R. § 30.25, entitled "How may a debtor obtain an oral hearing?", apprised Jones of her right to request such a hearing and plainly informed her that she must explain why such an evidentiary hearing would be needed. Coupled with counsel's acknowledgement that Jones' sole defense to offset is the passage of time and the total absence of any assertion or implication that Jones is not the debtor who borrowed this money, we conclude that the failure to afford Jones an evidentiary administrative hearing was not the fairly traceable cause of injury.

Accordingly, we hold that Jones does not have standing to raise the constitutional due process issues she asks the federal courts to decide.

## III. ENFORCEABILITY OF THE DEBT

■ Like others before her, Appellant argues that her student loan debt is time-barred against collection by the United States. Like them, she is unsuccessful. Jones contends that the Treasury regulation delineating which past-due legally enforceable debts may be referred to the IRS for offset, 26 C.F.R. § 301.6402–6T, is actually an eight-part definition of what is "legally enforceable." Consistent with this position, Jones then argues that 26 C.F.R. § 301.6402–6T(b)(2) creates a ten year federal statute of limitations which begins to run when the debt first goes into default. Jones then concludes that since her loan was placed in default by the College in 1974, collection by tax refund offset was forever time-barred sometime in 1984, approximately two years prior to the College's assignment of the loan to the Department. We disagree with Jones' analysis of the pertinent law for several reasons and conclude that the district court correctly determined that the debt was legally enforceable and subject to offset.

The specific portion of the IRS regulations on which Jones rests her argument reads as follows:

Jones was sent when these extensions were anticipated, but not yet enacted.

(b) *Past-due legally enforceable debt eligible for refund offset.* For purposes of this section, a past-due legally enforceable debt which may be referred by a Federal agency to the Service for offset is a debt—

(1) Which, except in the case of a judgment debt, has been delinquent for at least three months but has not been delinquent for more than ten years at the time the offset is made.

26 C.F.R. § 301.6402–6T(b)(2) (1988).

This regulation was promulgated pursuant to the power granted to the Internal Revenue Service under 31 U.S.C.A. § 3720A (Supp.1989) and 26 U.S.C.A. § 6402(d) (1989), companion statutes which set up the offset program and which impose a duty on the Secretary of the Treasury to comply with offset requests properly submitted by other federal agencies.

In *Roberts v. Bennett*, 709 F.Supp. 222 (N.D.Ga.1989), the district court granted summary judgment in favor of the Department of Education on facts similar to those now in this case. There, the plaintiff sued for recovery of her tax refund after the Department offset a delinquent student loan against the intercepted refund. In *Roberts*, the plaintiff defaulted on her loan in 1976, shortly after leaving school. The loan was assigned to the Department of Education for collection in 1980, and the offset took place in 1987. The plaintiff contended that the six year federal statute of limitations applicable generally to contract actions brought by the United States, 28 U.S.C.A. § 2415(a) (Supp.1989), had run since assignment of the loan. According to the plaintiff, the lapse of this limitations period precluded a finding that the debt was "legally enforceable" within the meaning of sections 3720A and 6402(d) and the appropriate regulations. In *Roberts*, the district court held that a limitations period precluded only the particular remedy barred by the statute—in that instance filing a lawsuit—but did not bar the underlying claim, nor other possible remedies such as enforcement through counterclaims, negative credit reports, foreclosure on collateral and administrative offset. *Id.* at 224–25. The court looked to the language

and legislative history of section 3720A, concluding "that IRS offset is available not only for judicially enforceable debts but for *all* legally enforceable debts." *Id.* at 225. The plaintiff, however, then argued that measured from the time when she first defaulted on her loan, it was delinquent within the meaning of the regulation for more than ten years and thus not subject to offset. The *Roberts* court responded that "the debt cannot become delinquent *until it is in the hands of the agency requesting the offset." Id.* (emphasis added). Although the six year statute prevented judicial enforcement of the debt, the court reasoned that offset was authorized and appropriate under section 3720A, as ten years had not elapsed since the Department of Education first became eligible to collect the debt by that method. *See also Thomas v. Bennett*, 856 F.2d 1165 (8th Cir.1988) (affirming district court's dismissal of taxpayer's suit for declaratory and injunctive relief and holding that IRS tax refund offset, having a ten year statute of limitations, was proper despite the fact that the six year statute under 28 U.S.C.A. § 2415(a) (Supp.1989) had run since the student loan was assigned to Education for collection); *Gerrard v. United States Office of Educ.*, 656 F.Supp. 570 (N.D.Cal. 1987) (holding that student loan debt was properly offset under section 3720A where the offset occurred more than six but less than ten years after the loan was assigned to Education).

In *Hurst v. United States Dep't. of Educ.*, 695 F.Supp. 1137 (D.Kan.1988), the taxpayer incurred a student loan debt in 1969 and 1970, which went into default in 1974. The loan was assigned to the Department of Education in mid–1981, and in 1986 the Department sent notice of a proposed offset. Offset occurred in early 1987. The taxpayer argued that the Treasury regulations established a statute of limitations measured from the initial date of default in 1974, thus rendering the debt unenforceable in 1984 and barring the offset. The district court rejected this argument, holding instead that the limitations period commenced only when, after assign-

ment, the government received the right to collect the debt. *Id.* at 1139. *Cf. United States v. Hunter,* 700 F.Supp. 26 (M.D.Fla. 1988) (in case involving collection by lawsuit as opposed to offset, the district court held that statute of limitations did not begin to run against the United States until the loan was assigned to it, irrespective of the fact that the state statute of limitations had long since run).

We find the analysis of these courts persuasive and controlling in the instant case. Jones' delinquent student loan debt was assigned to the Department of Education for collection on October 15, 1986. From that date forward, the Department had six years to collect the debt by lawsuit, 20 U.S.C.A. § 1091a(a)(4) (Supp.1989), and ten years to collect the debt by tax refund offset. 31 U.S.C.A. § 3720A (Supp.1989).[7] The actions complained of were taken according to the scheme established by Congress, and were well within time limits set for collection. Thus, we conclude that Jones' claim in this regard is without merit.

## IV. NOTICE OF SUMMARY JUDGMENT

Jones also contends that the district court erred in granting summary judgment in favor of the defendants without giving her notice that the defendants' motion to dismiss would be converted to a motion for summary judgment.

The dispositive motion filed by the defendants in this case stated on its face that, in the alternative, it was a motion for summary judgment. Verified materials were attached to the motion. The district court entered two orders stating that the motion would be decided on the basis of verified material, and thus sufficiently apprised Jones and her attorney twenty-one days before the deadline that the motion would be considered as one for summary judgment.[8] Jones received nothing less than fair compliance with the dictates of Rule 56. Nothing more is required.

## V. CONCLUSION

We conclude that the plaintiff Adeline Jones does not have standing to litigate the Fifth Amendment due process claims which she asserts. We further conclude that her delinquent student loan debt was legally enforceable. Accordingly, we AFFIRM the district court's grant of summary judgment in favor of the defendants.

---

7. In the Higher Education Amendments of 1986, Congress substantially revamped the NDSL program, renaming it the "Perkins Loan" program. In § 467 of the act, codified at 20 U.S.C.A. § 1087gg (Supp.1989), the Secretary was authorized to pursue collection broadly:

   COLLECTION OF REFERRED, TRANSFERRED OR ASSIGNED LOANS—The Secretary shall continue to attempt to collect any loan referred, transferred, or assigned under paragraph (5)(A), 5(B)(i), or (6) of section 463(a) until all appropriate collection efforts, as determined by the Secretary, have been expended.

   20 U.S.C.A. § 1087gg(b) (Supp.1989).

   The legislative history on this law states that it "[p]ermits the Secretary to continue collection

efforts of defaulted loans referred or assigned to him for an unlimited time." H.R.Rep. No. 99–383, 99th Cong., 2d Sess. 108, *reprinted in* 1986 U.S.Code Cong. & Admin.News 2572, 2679.

   Our holding in this case is not based upon the Higher Education Amendments of 1986.

8. Rule 56(c) of the Federal Rules of Civil Procedure requires that a motion for summary judgment be served on the opposing party at least ten days prior to the time set for the hearing. If a party cannot by affidavit present facts necessary to rebut the moving party, it may so state in an affidavit and request the court for a continuance to obtain affidavits, take depositions, or engage in discovery. Fed.R.Civ.P. 56(f).